IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CALVIN E. MCGOWAN            )
                            )
        v.                  )        NO. 3:04-0996
                            )
DELL COMPUTER CORP.[1]       )


TO:  Honorable Aleta A. Trauger, District Judge


# R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered November 9, 2004 (Docket Entry No. 2), this case was referred to the

Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636 and Rule 72 of the Federal Rules

of Civil Procedure, for case management, for decision on all pretrial, nondispositive motions, for

a report and recommendation on any dispositive motions, and to conduct any necessary proceedings.

Presently pending is the defendant's motion for summary judgment (Docket Entry No. 101).

The plaintiff has filed a response in opposition (Docket Entry No. 113).  Set out below is the Court's

recommendation for disposition of the motion.


## I.  PROCEDURAL BACKGROUND

The pro se plaintiff filed this action against Dell Computer Corporation ("Dell") and nine

individual defendants on November 8, 2004.  The plaintiff worked for Dell from July 19, 1999, to

---

[1] The defendant asserts that its proper name is Dell Products, L.P.  See, e.g., Docket Entry
No. 83.

July 6, 2003, as an Operations Supervisor at the Dell facilities located in Nashville and Lebanon, Tennessee.

The plaintiff, who is African-American, alleges that he suffered discrimination, harassment, and disparate treatment on account of his race and was retaliated against for filing a charge of discrimination. He asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401(a)(1), a state law claim of defamation, and a claim under 42 U.S.C. § 1981. See Complaint (Docket Entry No. 1), at ¶¶ 44-48 and 49-51.[2]

Dell filed an answer (Docket Entry No. 3) to the complaint on November 29, 2004. Approximately the first two years in the action were devoted to addressing the plaintiff's unsuccessful attempts to seek default against the individual defendants and his unsuccessful attempts to serve them with process.[3] By Order entered October 30, 2006 (Docket Entry No. 79), the plaintiff's claims against the nine individual defendants were ultimately dismissed.

After entry of a scheduling order on November 6, 2006 (Docket Entry No. 80), the next seven months were devoted to resolving the issues of the plaintiff's failure to participate in his deposition and his attempted transfer of his legal claims to his minor children during the midst of

---

[2] The plaintiff alleges in his complaint that he was also discriminated against because of his age. However, he does not set out a specific cause of action based on age discrimination nor refer to age discrimination in the statement of his two causes of action that are listed in the complaint.

[3] See Report and Recommendation entered August 31, 2005 (Docket Entry No. 51); Order entered September 19, 2005 (Docket Entry No. 52); Order entered April 28, 2006 (Docket Entry No. 64); and Report and Recommendation entered July 25, 2006 (Docket Entry No. 69).

2

a bankruptcy proceeding.[4] See Report and Recommendation entered July 20, 2007 (Docket Entry No. 93), and Order entered August 10, 2007 (Docket Entry No. 94).

Upon resolution of the above issues and nearly three years after the complaint was filed, amended scheduling orders (Docket Entry Nos. 96 and 98) were entered, the plaintiff's deposition was taken, and the instant motion for summary judgment was filed addressing the merits of the plaintiff's claims.

## II. THE PLAINTIFF'S ALLEGATIONS

The plaintiff was a management employee at Dell who worked as a B3 Operations Supervisor. He alleges that he was repeatedly passed over for promotions to higher level management positions and that these position were given to less qualified and less experienced white males, even in cases in which he had performed the duties of the higher management position on an interim basis. See Complaint, at ¶ 25-26. He specifically identifies positions for which he was not selected in June 2000, December 2000, February 2001, January 2003, and April 2003. Id. at ¶¶ 21, 24-25, and 31-32.

The plaintiff also alleges that he was subjected to a hostile work environment because of his race. He contends that he was held to a higher standard of job performance and given fewer or less resources with which to accomplish his tasks. Id. at ¶ 17. He alleges that his work duties were changed, that he was given additional duties, and that his supervisors criticized him and did not support him adequately with respect to management presentations he made. Id. at ¶¶ 20-23, 28, 29,

_____

[4] The plaintiff and his wife filed a petition under Chapter 13 of the Bankruptcy Code on March 25, 2004. The action was converted to a Chapter 7 case on February 23, 2006, and a final decree was entered on November 15, 2006, discharging the Chapter 7 Trustee and closing the case.

3

and 34. He further alleges that an upper management director, Greg Kelly, made a comment to one of the plaintiff's African-American co-workers that he had heard that the co-worker and the plaintiff were informally meeting in a smoking area at the Dell plant. Id. at ¶ 33. The plaintiff alleges that this comment caused the co-worker to stop meeting with the plaintiff yet white management employees met informally without incurring any comment or criticism. Id.

The Plaintiff alleges that on May 6, 2003, he sought treatment and hospitalization for stress related disorders which he contends were caused by the alleged events at Dell. Id. at ¶¶ 35-36. During his hospitalization, he alleges that his senior manager refused to process his paperwork to allow him to be paid even though he had vacation and personal days available. Id. On June 10, 2003, the plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination, #253-2003-01548, alleging racial and age discrimination in the denial of promotional opportunities with Dell.

The plaintiff alleges that two subsequent events occurred which were forms of retaliation against him for filing this charge. See Attachments to Defendant's Motion (Docket Entry No. 101-1), at 68-69. The plaintiff contends that, although he made several inquiries to Dell about the necessary documentation he needed to return to work, when he returned to work on June 13, 2003, he was sent home after working seven hours because his doctor's excuse was not on Dell letterhead. See Complaint, at ¶¶ 38-39. The plaintiff alleges that this requirement had never been a Dell policy and that a signed doctor's statement was all that was required. Because the plaintiff's doctor was not available, the plaintiff asserts that he missed a week of work before he could obtain the requested paperwork. Id.

4

On July 6, 2003, the plaintiff's employment with Dell ended. On this date, he was called in at the end of his work shift for a meeting with Jim Kerian, his senior manager, and Ken Forte, the Human Resources Manager. Id. at 40-41. The purpose of the meeting was to discuss a complaint made by one of the plaintiff's work subordinates that the plaintiff had embarrassed her in front of co-workers by asking her about her vacation time. The plaintiff contends that no other management employee had ever been counseled for discussing such a matter and that he asked to be excused from the meeting to go to the restroom. He contends that Mr. Forte "stalked" him to the restroom, the head of security was called to follow him, and that Mr. Kerian "continued to badger" him as he went to his desk to retrieve his keys and leave. Id. at ¶ 41. Although the plaintiff contends that he did not resign his employment on this day, Dell construed his actions as a resignation.

The plaintiff alleges that he has suffered ongoing mental health problems because of the trauma he endured at Dell. He asserts that he is currently disabled and has been diagnosed with Chronic Psychological Trauma Stress Disorder. Id. at ¶ 43.

On September 8, 2003, the plaintiff filed a second EEOC charge of discrimination, # 253-2003-02644, alleging that the events of June 13, 2003, and July 6, 2003, were acts of retaliation against him based on his prior charge of discrimination. See Docket Entry No. 101-1, at 68. On March 20, 2004, the plaintiff amended both of his charges of discrimination with the same five page amendment containing essentially the same factual allegations as alleged in the instant complaint. Id. at 66 and 69; and Attachments to Complaint. On August 10, 2004, the plaintiff was issued a right to sue letter from the EEOC. See Docket Entry No. 101-1, at 67 and 69.

5

## III. MOTION FOR SUMMARY JUDGMENT AND RESPONSE

Dell argues that summary judgment is warranted because:

1. the plaintiff has abandoned any claims of age discrimination;

2. the plaintiff's claims of racial discrimination are untimely;

3. the plaintiff cannot establish a prima facie case of racial discrimination and, even if the plaintiff establishes a prima facie case, he cannot show that Dell's legitimate, non-discriminatory reasons for its employment decisions were pretext for unlawful discrimination;

4. the plaintiff cannot establish a prima facie case of retaliation and, even if the plaintiff establishes a prima facie case, he cannot show that Dell's legitimate, non-discriminatory reasons for its employment decisions were pretext for unlawful retaliation; and

5. the plaintiff's state law claim of defamation is untimely and, further, fails on the merits because the plaintiff's allegations do not support a claim of defamation.

## IV. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). To prevail, the moving party must demonstrate the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Logan v. Denny's, Inc., 259 F.3d 558, 566 (6th Cir. 2001).

6

In determining whether the moving party has met its burden, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. See Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). The Court's function "is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" Little Caesar Enters., Inc. v. OPPCO, LLC, 219 F.3d 547, 551 (6th Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case upon which the nonmoving party bears the burden, the moving party is entitled to summary judgment as a matter of law. See Williams v. Ford Motor Co., 187 F.3d 533, 537-38 (6th Cir. 1999). To avoid summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmoving party]." Shah v. Racetrac Petroleum Co., 338 F.3d 557, 566 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded [trier of fact] to find for the nonmoving party, the motion for summary judgment should be granted. Anderson, 477 U.S. at 249-52. Finally, "[a] genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citing Anderson, 477 U.S. at 247-49).

# V. CONCLUSIONS

## A.  Age Discrimination Claims

The Court agrees that the plaintiff has abandoned any age discrimination claims.  First, Plaintiff's complaint does not clearly set out an age discrimination claim.  Although he states that he was discriminated against on the basis of his race and age, <u>see</u> Complaint, at ¶¶ 17-18, he does not include a claim for age discrimination under the Age Discrimination in Employment Act in the two causes of action set out in his complaint despite specifically relying on other statutory provisions as the grounds for his causes of action and does not mention age discrimination in those two causes of action, which only identify race as the alleged discriminatory factor.  <u>See</u> Complaint, at ¶¶ 44-51.

Second, the plaintiff clearly stated at his deposition that the instant lawsuit is focused primarily on claims of racial discrimination.  <u>See</u> Plaintiff's Deposition (Docket Entry No. 101-1), at 105.[5]  Further, in his response in opposition to summary judgment, the plaintiff has not  argued that he is asserting an age discrimination claim, has not disputed the defendant's assertion that he has abandoned any age discrimination claims, and states in his affidavit that the nature of his claim is for racial discrimination.  <u>See</u> Docket Entry No. 114, at ¶ 20.  Accordingly, summary judgment should be granted to the defendant on the plaintiff's age discrimination claims.

---

[5] All page citations to the plaintiff's deposition reflect the actual pages of the deposition transcript rather than the CM/ECF page numbers.

B.  The Timeliness of the Plaintiff's Racial Discrimination Claims

Although the Court agrees with the defendant that some of the events alleged by the plaintiff do not form the basis for a timely filed claim, the Court does not agree with the defendant's argument that all of the plaintiff's racial discrimination claims warrant dismissal because they are time-barred.[6]

The plaintiff has alleged claims under three separate statutory provisions:  Title VII, the THRA, and 42 U.S.C. § 1981.  Each of these provisions requires the Court to engage in a substantively different analysis of the timeliness of the plaintiff's claims.

1.  Title VII

The timely filing of an EEOC charge of discrimination is a prerequisite to filing a lawsuit under Title VII.  See 42 U.S.C. § 2000e-5(e)-(f); Puckett v. Tennessee Eastman Co., 889 F.2d 1481, 1486-88 (6th Cir. 1989).  A party pursuing claims under Title VII is required to file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory practice.  42 U.S.C. § 2000e-5(e)(1); Amini v. Oberlin College, 259 F.3d 493, 498-99 (6th Cir. 2001).[7]

The 300 day limitations period begins to run when a plaintiff has knowledge of the employment decision, practice, or action at issue, not when a plaintiff becomes aware of the consequences of the act or when he believes it to be unlawful.  Amini, 259 F.3d at 498-99.  The

---

[6] The defendant does not argue that the plaintiff's retaliation claim is untimely.

[7] Because Tennessee has enacted state laws prohibiting employment discrimination, it is a "deferral state" for the purposes of federal discrimination statutes.  Accordingly, the plaintiff has 300 days within which to file a charge of discrimination instead of 180 days as is the case in non-deferral states.  See Weigel v. Baptist Hosp. of E. Tenn., 302 F.3d 367, 375-76 (6th Cir. 2002); Amini, 259 F.3d at 498.

instant plaintiff's charge of discrimination was filed on June 10, 2003, and events occurring more than 300 days prior to this date cannot form the basis for a timely claim of discrimination. Accordingly, the plaintiff's discrimination claims based on events occurring prior to August 15, 2002, were not part of a timely filed charge of discrimination and are presumptively barred from consideration.

Although somewhat inartfully stated, the plaintiff raises two issues related to the timeliness of his claims which could permit review of his otherwise untimely claims.

First, the plaintiff alleges that Dell engaged in a "continuing pattern and practice of discrimination against African-Americans." See Complaint, at ¶ 18. A plaintiff who shows that the alleged discriminatory acts against him were part of a "longstanding and demonstrable policy of discrimination" may rely on those acts as the basis for his claim even though the acts occurred outside the 300 day time period. See Sharpe v. Cureton, 319 F.3d 259, 268 (6th Cir. 2003). However, this exception is strictly construed and is satisfied only where there is evidence of a policy or rule supporting discrimination. See Alexander v. Local 496, Laborers' Int'l Union, 177 F.3d 394, 408-09 (6th Cir. 1999); LRL Properties v. Portage Metro. Hous. Auth., 55 F.3d 1097, 1106 (6th Cir. 1995); Dixon v. Anderson, 928 F.2d 212, 217 (6th Cir. 1991). The plaintiff "must demonstrate something more than the existence of discriminatory treatment in his case." Haithcock v. Frank, 958 F.2d 671, 679 (6th Cir. 1992). After review of the plaintiff's response in opposition to summary judgment, the Court finds that the plaintiff fails to set forth evidence showing that Dell maintained an overall policy or rule of discriminating against African-American employees and, thus, the plaintiff fails to satisfy the standards for this exception.

10

Second, the plaintiff argues that the events occurring prior to August 15, 2002, were part of a continuing pattern of discrimination against him. He contends that, because he raises some claims which were timely included in his charge of discrimination, all of the acts that were part of the continuing pattern of discrimination should be considered by the Court.

The plaintiff's argument is valid as it concerns his claim of a hostile work environment. Hostile work environment claims involve "a series of separate acts that collectively constitute one 'unlawful employment practice.'" National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); Sharpe, 319 F.3d at 267 (hostile work environment claims "involve unlawful employment practices that cannot be said to occur on any particular day, but occur over a series of days"). As such, a hostile work environment claim is timely so long as the plaintiff files his EEOC charge within three hundred days of any single act contributing to the hostile work environment. Morgan, 536 U.S. at 117. It is irrelevant if some acts contributing to the hostile work environment occurred prior to the limitations period, and such prior acts may be considered in evaluating the claim. Id. See also Barrett v. Whirlpool Corp., 543 F.Supp.2d 812, 819 (M.D. Tenn. 2008).

In the instant action, the plaintiff alleges acts occurring after August 15, 2002, which are part of his claim of a hostile workplace and which fall within the 300 day period. See Complaint, at ¶¶ 29, 30, and 33-34. Accordingly, the Court may consider other acts of alleged workplace hostility in review of this claim even though these acts occurred outside the 300 day period.

However, the plaintiff's continuing violation argument lacks merit as it pertains to the specific instances when he alleges he was wrongfully denied a promotion. Title VII "precludes recovery for discrete acts of discrimination . . . that occur outside the statutory time period."

11

Morgan, 536 U.S. at 105. Because "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," each such incident or adverse decision "constitutes a separate actionable 'unlawful employment practice.'" Id. at 114. Each incident must be included in a timely EEOC complaint, or it is no longer actionable. Id. See also Broadway v. United Parcel Service, Inc., 499 F.Supp.2d 992, 999-1000 (M.D. Tenn. 2007). "Each discriminatory act starts a new clock for filing charges alleging the act." Morgan, 536 U.S. at 133. In other words, Morgan does not permit application of the continuing violation doctrine to "discrete acts of which [a plaintiff] was immediately aware when they occurred . . . ." Bell v. Ohio State Univ., 351 F.3d 241, 248 (6th Cir. 2003). See also Ledbetter v. Goodyear Tire & Rubber Co., Inc., __ U.S. __, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007).

Accordingly, the specific instances when the plaintiff was denied a promotion cannot be viewed as part of a continuing violation. The alleged instances when he was denied a promotion which occurred prior to August 15, 2002, see Complaint at ¶¶ 20, 21, 24, and 25, are barred as untimely and summary judgment should be granted to the defendant on these claims.


2. Tennessee Human Rights Act

A complaint alleging violations of the Tennessee Human Rights Act ("THRA") must be filed within one year "after the alleged discriminatory practice ceases." Tenn. Code. Ann. § 4-21-311(d); Weber v. Moses, 938 S.W.2d 387, 389-90 (Tenn. 1996). See also Wade v. Knoxville Utils. Bd., 259 F.3d 452, 464 (6th Cir. 2001). The THRA's one year limitations period is not tolled while administrative charges are pending with the Tennessee Human Rights Commission ("THRC") or the EEOC. Wade, supra; Burnett v. Tyco Corp., 932 F. Supp. 1039, 1044 (W.D. Tenn. 1996).

12

In the instant action, the plaintiff's employment at Dell ended on July 6, 2003. Any possible alleged discriminatory practices ceased at this time.[8] However, the instant action was not filed until November 8, 2004. Accordingly, the THRA claims raised by the plaintiff were filed after the one year time period had expired and are barred by the applicable statute of limitations. Summary judgment should be granted to the defendant on all THRA claims asserted by the plaintiff.

### 3. Section 1981

The defendant does not address the timeliness of the plaintiff's Section 1981 claims in its motion. Since a four year statute of limitations applies, see Jones v. R.R. Donnelly & Sons Co., 541 U.S. 369, 382, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004), the plaintiff's Section 1981 claims based on any events occurring after November 8, 2000, would presumably be timely.

## C. Hostile Workplace Claim

Summary judgment should be granted to the defendant on the plaintiff's claim that he was subjected to a racially hostile workplace. Even given the most generous reading, the evidence before the Court fails to support this claim. There is simply no evidence before the Court supporting a conclusion that the plaintiff suffered a racially hostile workplace at Dell, and no reasonable trier of fact could find in the favor of the plaintiff on this claim.

---

[8] The plaintiff met with Dell's Director of Human Resources on July 9, 2003, and Dell subsequently confirmed on July 11, 2003, that it viewed the plaintiff as having resigned and would not rescind the resignation. See Plaintiff's Response to Statement of Undisputed Material Facts (Docket Entry No. 155), at ¶¶ 36-39. Even if the Court views this date as the date the alleged discriminatory act ceased, the THRA claims remain untimely filed.

13

A plaintiff may establish a violation of Title VII by proving that racially based harassment in the workplace created a hostile or abusive working environment.  See Meritor Savings Bank v. Vinson, 477 U.S. 57, 66, 106 S. Ct. 2399, 91 L. Ed.2d 49 (1986); Williams v. General Motors Corp., 187 F.3d 553, 560 (6th Cir. 1999).  In cases in which the hostile work environment is alleged to have been caused by supervisors or agents of the employer, the plaintiff must show that: (1) he is a member of a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on his race; and (4) the harassment unreasonably interfered with his work performance by creating an environment that was intimidating, hostile, or offensive.  See Clay v. United Parcel Service, Inc., 501 F.3d 695, 706 (6th Cir. 2007); Michael v. Caterpillar Financial Services Corp., 496 F.3d 584, 600 (6th Cir. 2007); Bowman v. Shawnee State Univ., 220 F.3d 456, 462-63 (6th Cir. 2000); Williams, 187 F.3d at 560-561.[9]

Actionable harassment arises where "the workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).  In determining whether the alleged harassment is sufficiently severe or pervasive in an objective sense, the Court must consider the totality of the circumstances.  See Williams, 187 F.3d at 562.  The work environment as a whole must be considered rather than individual acts of alleged harassment and isolated incidents.

---

[9] Once the plaintiff has established his prima facie case, the employer may escape liability by showing that it took reasonable care to prevent and correct any harassing behavior by supervisory personnel and that the plaintiff failed to take advantage of preventative or corrective opportunities. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998);  Williams, supra. As set out infra, because the plaintiff fails to satisfy his prima facie case, there is no need to address the affirmative defense to vicarious employer liability.

Individual incidents, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment. See Bowman, 220 F.3d at 463. The Supreme Court has noted the following factors to consider in making the determination of objective severity: the frequency of the harassing conduct; its severity; whether it is physically threatening or humiliating, or merely offensive; and whether it unreasonably interferes with an employee's work performance. Harris, 510 U.S. at 23.

Given these standards, the plaintiff's evidence falls far short of showing that he endured a racially hostile workplace at Dell. The incidents about which the plaintiff primarily complains -- the manner in which supervisors and other management officials critiqued or managed him and their alleged failure to support him regarding presentations -- do not rise to the level of harassment as opposed to merely being part of the ordinary routine of employment. Merely disagreeing with such actions or subjectively perceiving them to be unfair does not render them acts of harassment.

The plaintiff also complains about incidents involving two co-workers at Dell. The plaintiff asserts that an African-American co-worker, Kevin Hawkes, told him that a Dell manager had commented to Hawkes that the manager "had been told that [the co-worker] and [the plaintiff] had been getting together and having meetings in the smoking area," see Complaint, at ¶ 33, and the plaintiff states that this co-worker subsequently curtailed smoking with the plaintiff. This incident is far removed from what could be viewed as harassment and was not even something directly involving the plaintiff.[10]

---

[10] The plaintiff was told this comment by the co-worker and did not directly hear the comment. Given that the plaintiff has not filed the affidavit of the co-worker, what the co-worker told the plaintiff would not be competent evidence in support of the plaintiff's opposition to summary judgment.

The defendant notes that, in his deposition, the plaintiff also testified that Kevin Brown, an African-American employee at Dell, said that the plaintiff expected people to "give him something" and "at a party once" he called him "Little Mandela." <u>See</u> Defendant's Memorandum (Docket Entry No. 103). However, the plaintiff did not refer to these comments in his complaint, the EEOC charge of discrimination, or in his affidavit of facts (Docket Entry No. 114), and there is no indication that the plaintiff relies on these comments for his hostile workplace claim. Indeed, in his deposition, the plaintiff referred to the "Little Mandela" comment as being "neither here nor there." <u>See</u> Plaintiff's Deposition (Docket Entry No. 101-1), at 171.

There is also no evidence before the Court that any of the events complained about by the plaintiff, even if viewed as harassment, were in any way racially tinged or linked to the plaintiff's race. A claim under Title VII requires proof that the harassment occurred because of the plaintiff's protected status. <u>See</u> <u>Russell v. University of Toledo</u>, __ F.3d __, 2008 WL 3288345 (6th Cir. Aug. 12, 2008) (recommended for full text publication); <u>Howard v. Board of Education of Memphis City Schools</u>, 70 Fed. Appx. 272, 2003 WL 21518725 (6th Cir. July 1, 2003) (unpublished). There is no evidence that any Dell management employee or supervisor made either overt or veiled racial comments or insults in connection with any of the incidents or that racial overtones were otherwise a part of any of these incidents through gestures, jokes, written materials, or other actions. <u>Compare</u> <u>Allen v. Michigan Dept. of Corrections</u>, 165 F.3d 405, 410-11 (6th Cir. 1999) (plaintiff was subject to racial epithets and insults by supervisors and received a threatening note signed by the "KKK" which included a picture of a stick figure with a noose around its neck). Further, the plaintiff has not offered evidence that, but for the plaintiff's race, these actions would not have occurred. In order to prove that a racially hostile workplace existed, there must be some kind of evidence

16

showing that the alleged harassment was linked to the plaintiff's race.  See Farmer v. Cleveland Public Power, 295 F.3d 593, 605 (6th Cir. 2002), abrogated on other grounds by White v. Columbus Metropolitan Housing Authority, 429 F.3d 232 (6th Cir. 2005).  There is simply none in this case.

Finally, even if the incidents about which the plaintiff complains could be viewed as racial harassment, these incidents do not rise to the level of being objectively "severe or pervasive" as is required for a hostile workplace claim.  Given the totality of the circumstances, the incidents complained about by the plaintiff are neither remarkable nor abusive within the context of the plaintiff's employment.  See Prather v. Austin Peay State University, 2007 WL 2688546 (M.D. Tenn., Sept. 11, 2007) (unpublished) (plaintiff did not show a hostile workplace based on allegations that she was disparaged in front of students by the department chairman and by a colleague, that she was not provided with adequate financial support, technical support, or mentoring, that she was removed from a leadership position, that she was singled out for absenteeism, that she was prohibited from giving final examinations early, that she was ostracized at department meetings, that she was never made the head of any committees, that she and her students were prevented from using certain facilities, that she was prevented from applying for a promotion in 2003, and that she was not reimbursed for travel expenses).

What the plaintiff has complained about are essentially management practices which he believes were unfair, unreasoned, or faulty.  However, Title VII does not give the Court the authority to correct general mismanagement, and federal courts are generally not in the business of refereeing common workplace conflicts, Michael, 496 F.3d at 600 (evidence of confrontation and harsh words from supervisor, that employee was required to turn in her laptop computer, and that employee was briefly placed on paid administrative leave were insufficient to show a hostile workplace), or

17

resolving trivial or routine workplace dissatisfactions. White v. Burlington Northern & Santa Fe Railway. Co., 364 F.3d 789, 795 (6th Cir. 2004), aff'd Burlington Northern & Sante Fe Railway Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006); Prather, supra. See also Vore v. Indiana Bell Tel. Co. Inc., 32 F.3d 1161, 1162 (7th Cir. 1994) (noting that federal law "does not guarantee a utopian workplace, or even a pleasant one.").

## D.  Retaliation Claims

### 1.  June 13, 2003, Incident

The plaintiff alleges that he was retaliated against on June 13, 2003, when he attempted to return to work. See Complaint, at ¶ 39.  After review of the evidence before the Court, the Court finds that summary judgment should be granted to the defendant on the claim that he was retaliated against on June 13, 2003.  Even when given the most generous reading, there is insufficient evidence before the Court to support this claim, and no reasonable trier of fact could find in favor of the plaintiff based on the evidence before the Court.

Title VII forbids an employer from "discriminat[ing] against any . . . employee[s] . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII.]."  42 U.S.C. § 2000e-3(a).  Unlawful employment practices under Title VII include any actions taken on the basis of race, color, religion, sex, or national origin that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2.  See Imwalle v. Reliance Medical Products, Inc., 515 F.3d 531, 543 (6th Cir. 2008).  A plaintiff may establish a claim of

18

retaliation under Title VII either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation. DiCarlo v. Potter, 358 F.3d 408, 420 (6th Cir. 2004).

The plaintiff does not set forth any direct evidence of retaliation, such as an explicit statement that actions were taken against him due to his filing of a charge of discrimination. Such evidence, if believed, would require no inferences to conclude that unlawful retaliation was a motivating factor in the challenged action. Abbott v. Crown Motor Co., 348 F.3d 537, 542 (6th Cir. 2003).

Instead, the plaintiff's claim is advanced as a circumstantial case in which the retaliation claim is analyzed under the evidentiary framework set out in McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1972), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), that is used to assess claims of racial discrimination. See Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987) (applying McDonnell Douglas and Burdine to a retaliation claim). In order to establish a retaliation claim, the plaintiff must prove: (1) he engaged in an activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took action that a reasonable person would have found to be materially adverse; and (4) a causal connection existed between the protected activity and the adverse employment action or harassment. See Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 154 L.Ed.2d 345 (2006); Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 345-49 (6th Cir. 2008) (recognizing that the scope of Title VII's anti-retaliation provision remains unsettled post-Burlington Northern and post-Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and Faragher v. City of Boca

19

Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)); Morris v. Oldham County Fiscal Court, 202 F.3d 784, 792 (6th Cir. 2000). "If and when a plaintiff has established a prima facie case, the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." Morris, 202 F.3d at 792-93 (citation omitted).

Upon the defendant's offer of a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to demonstrate that the asserted reason is pretextual, masking retaliation. Virts v. Consolidated Freightways Corp., 285 F.3d 508, 521 (6th Cir. 2002); Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th cir. 2000). The plaintiff can demonstrate pretext by showing that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the challenged conduct; or (3) was insufficient to warrant the challenged conduct. Virts, supra. However, the ultimate burden of persuasion always remains with the plaintiff. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 517-18, 113 S.Ct. 2742, 125 L.Ed.2d. 407 (1993).

The defendant argues that the plaintiff cannot show a prima facie case because he has no evidence that: 1) Dell knew of the charge of discrimination filed by the plaintiff; 2) Dell took a materially adverse action against the plaintiff; and 3) a causal connection exists between the plaintiff's protected activity and the action about which he complains. The defendant argues that, even if a prima facie case has been established, there is no proof that Dell's reason for the alleged action was a pretext for retaliation.

The Court agrees that summary judgment should be granted to the defendant on this claim. The plaintiff's first EEOC charge of discrimination was filed on June 10, 2003. The alleged retaliatory act occurred on June 13, 2003. The plaintiff admits that he does not know when Dell learned of the charge of discrimination and he does not dispute that the EEOC informed him that it

had not sent a copy of his charge to Dell as of June 13, 2003. See Plaintiff's Response to Statement of Undisputed Material Facts (Docket Entry No. 115), at ¶¶ 26-27.

The only proof the plaintiff has to support his belief that Dell knew of the EEOC charge is his deposition testimony that a co-worker came to him on June 13, 2003, "implying that I had caused problems or were having problems with the company" and that this co-worker knew that he had filed an EEOC charge. See Plaintiff's Deposition (Docket Entry No. 101-1), at 228. However, this evidence fails to show that the defendant was aware of his charge of discrimination. First, the plaintiff has not submitted an affidavit from the co-worker and his account of what the co-worker said to him is inadmissible hearsay which is not competent evidence opposing summary judgment. Second, the statements allegedly made by the co-worker, even if properly before the Court, fail to show that Dell had knowledge of the charge of discrimination filed by the plaintiff. At the most, they evidence the co-worker's awareness of the charge of discrimination.

Given the complete lack of evidence showing that the defendant had knowledge of the EEOC charge of discrimination on June 13, 2003, the plaintiff also fails to satisfy the fourth prong of his prima facie case which requires the showing of a causal connection between the protected activity and the challenged employment action. The plaintiff has no direct evidence supporting a claim of a causal connection. In order to rely on circumstantial evidence to show a causal connection, he must show "a temporal connection coupled with other indicia of retaliatory conduct." Randolph v. Ohio Dept. of Youth Services, 453 F.3d 724, 737 (6th Cir. 2006); Little v. BP Exploration & Oil Co., 265 F.3d 357, 364 (6th Cir. 2001). There is no such evidence before the Court.

The plaintiff's only support for this claim of retaliation is his subjective opinion. Such evidence is simply insufficient to support such a claim. See McDonald v. Union Camp Corp., 898

F.2d 1155, 1162 (6th Cir. 1990); <u>Locke v. Commercial Union Ins. Co.</u>, 676 F.2d 205, 206 (6th Cir. 1982).[11]

### 2. July 6, 2003, Incident

The plaintiff also alleges that he was retaliated against on July 6, 2003, when his supervisors badgered him and contended that he walked off his job. <u>See</u> Complaint, at ¶¶ 40-41. Although the defendant indicates that the retaliation claim is based on only the events of June 13, 2003, <u>see</u> Memorandum in Support (Docket Entry No. 103), at 21, the plaintiff also clearly asserts a retaliation claim based on the events of July 6, 2003. <u>Id</u>. at ¶ 41. He reaffirms this in his deposition. <u>See</u> Plaintiff's Deposition (Docket Entry No. 101-2), at 52. However, the defendant has not specifically sought summary judgment on this claim.

On the other hand, it appears that the defendant believes that the plaintiff has asserted a claim that he was wrongfully terminated because of his race based on the events of July 6, 2003. <u>See</u> Defendant's Memorandum (Docket Entry No. 103) at 20-21. The defendant argues that this claim fails because there is no evidence showing that Dell took adverse action against the plaintiff and the undisputed proof shows that the plaintiff walked away from his job. <u>Id</u>. Thus the defendant contends that the plaintiff cannot satisfy the third element of his <u>prima facie</u> case. <u>Id</u>.

After review of the entire record in this action, the Court finds that the plaintiff has asserted only a claim of unlawful retaliation based on the events of July 6, 2003, and has not asserted a claim

---

[11] Because the plaintiff fails to satisfy the second and fourth elements of his <u>prima facie</u> case, there is no need for the Court to address the defendant's argument that the plaintiff has not shown that he suffered a materially adverse employment action or that he lacks proof on the issue of pretext.

Case 3:04-cv-00996   Document 116   Filed 08/15/08   Page 22 of 30 PageID #: 728

of wrongful termination because of his race. The plaintiff's complaint sets out this claim as only a retaliation claim. See Complaint at ¶¶ 40-41. The amended charges of discrimination and five page attachment also set out the claim as only a retaliatory discharge. See Attachment 1 to Complaint. Further, the plaintiff discusses the facts surrounding this claim in his affidavit with only references to retaliation. See Plaintiff's Affidavit (Docket Entry No. 114), at ¶¶ 143-187.

However, because analysis of the prima facie case for a retaliatory discharge and the prima facie case for a racially discriminatory discharge are essentially the same, the Court will rely on the analysis of the claim set out by the defendant as applicable to the claim of a retaliatory discharge.

The Court finds that summary judgment is not warranted on this claim based on the evidence which is before the Court. The defendant argues that, based upon the plaintiff's testimony at his deposition, the facts show that he voluntarily walked away from his job and quit his employment at Dell on July 6, 2003. See Defendant's Memorandum (Docket Entry No. 103), at 20-21. Therefore, the defendant argues that there is no evidence that Dell took any adverse action against the plaintiff and that the termination of his employment at Dell was the result of his own actions.

The Court cannot find that the events of July 6, 2003, so clearly lead to the conclusion that the plaintiff voluntarily walked away from his job and resigned. The defendant is correct that it is undisputed that the plaintiff walked out of a meeting with Mr. Kerian and Mr. Forte, left his badge and radio at the facility, and exited the building without speaking to either Mr. Forte or Mr. Kerian despite their attempts to continue carrying on a conversation with him and despite Mr. Kerian's telling him that he was going to assume the plaintiff was quitting because of the plaintiff's refusal to talk to Mr. Kerian.

Case 3:04-cv-00996   Document 116   Filed 08/15/08   Page 23 of 30 PageID #: 729

However, a fair reading of the plaintiff's complaint, deposition, affidavit, and response to the defendant's statement of undisputed facts indicates that the plaintiff believed that the meeting itself involved an unnecessary and humiliating counseling session for a minor and unremarkable incident, that the meeting became emotional, that he left to go the restroom and Mr. Forte followed him, that Mr. Kerian called for security and also followed the plaintiff as he left the building, and that his silence toward Mr. Kerian was merely the consequence of the emotional nature of the meeting. The plaintiff denies that he resigned his employment, he offers an explanation for leaving his radio and badge at the facility, that his work shift was over at the time of the meeting, and that he in no way intended to resign his job at Dell.

The Court finds that the facts surrounding this event are sufficiently disputed and capable of significantly differing interpretations. The Court disagrees that the events can only be interpreted as evidencing a voluntary resignation of employment by the plaintiff and disagrees that the plaintiff cannot satisfy the prima facie case requirement of showing that the defendant took an action against him which a reasonable person would view as adverse. Taken in the light most favorable to the plaintiff, a reasonable trier of fact could find that the actions of Mr. Kerian and Mr. Forte could have dissuaded a reasonable person from making or supporting a charge of discrimination. Summary judgment should be denied to the defendant on this claim.


E. Failure to Promote Claims

In his complaint, the plaintiff identifies only two specific post-August 15, 2002, promotions which he believes were denied him an account of his race: a Quality Assurance Manager position for which he applied in January 2003, and for which Vic Srinivasan was selected, see Complaint at

24

¶ 31; and an Operations Manager Position for which he applied in April 2003, and for which Frank Hitzler was selected. Id. at ¶ 32.

In his affidavit, the plaintiff states that he also applied for a Quality Assurance Manager Position in September 2002, but that the position was not filled. See Plaintiff's Affidavit (Docket Entry No. 114), at ¶ 133.

The defendant cites to the plaintiff's deposition testimony suggesting that his failure to promote claim also includes an Operations Manager position which was filled by Bryan Jacobi. See Defendant's Memorandum in Support (Docket Entry No. 103), at 4-5. However, the plaintiff clearly indicates that he was denied this promotion in July 2001. See Plaintiff's Affidavit (Docket Entry No. 114), at ¶ 129. Accordingly, this event occurred prior to August 15, 2002, and falls outside the time period for timely claims under Title VII and the THRA.

The plaintiff also alleges that he "was constantly applying for other management positions at Dell, which I never got" and that "[o]ther times, too numerous to count, I applied for management positions electronically, never to even receive an acknowledgment from personnel or the designated coordinator of the interview." See Complaint, at ¶ 26. He essentially repeats this allegation in his affidavit. See Plaintiff's Affidavit (Docket Entry No. 114), at ¶ 88. However, at this stage of the proceedings, such general and factually unspecific allegations cannot form the basis for a failure to promote claim. A failure to promote claim must be based upon a discrete and singular act and the Court shall therefore limit consideration of this claim to the three positions identified supra.

To demonstrate a prima facie case based on a claim of failure to promote, the plaintiff must show that (1) he is a member of a protected class; (2) he applied for, and was qualified for a promotion; (3) he was considered for and was denied the promotion; and (4) an individual of similar

qualifications who was not a member of the protected class received the job at the time the plaintiff's request for the promotion was denied.  See White v. Columbus Metropolitan Housing Auth., 429 F.3d 232, 240 (6th Cir. 2005); Nguyen v. City of Cleveland, 229 F.3d 559, 562-63 (6th Cir. 2000).

If the plaintiff establishes a prima facie case under this framework, he creates a rebuttable presumption of unlawful discrimination and the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the challenged action.  Burdine, 450 U.S. at 254-56.  Upon the defendant's offer of a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to demonstrate that the defendant's reason is pretextual, masking intentional discrimination.  Dews, 231 F.3d at 1021.  The plaintiff can demonstrate pretext by showing that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the challenged conduct; or (3) was insufficient to warrant the challenged conduct.  Id.  The ultimate burden of persuasion always remains with the plaintiff.  St. Mary's Honor Ctr., 509 U.S. at 511.

1.  January 2003, Quality Assurance Manager position

Summary judgment should be granted to the defendant on this claim because the plaintiff has not satisfied the second and fourth elements of his prima facie case.

The burden is on the plaintiff to show that he was qualified for the position.  He has presented no proof on this issue.

Even if the Court assumes that the undisputed fact that the plaintiff was interviewed for this position is enough to create a presumption that the plaintiff was qualified for the position, the plaintiff has nonetheless failed to present proof that he and Mr. Srinivasan had similar qualifications or that he was more qualified than Mr. Srinivasan.  A plaintiff does not satisfy the fourth element

of the prima facie case by merely identifying the person outside the protected class who was selected for the position.  See White, 429 F.3d at 241.  The plaintiff is required to establish that he and the person selected had similar qualifications.  Id. at 242.  There is no evidence before the Court on this issue.  The Court is left to guess as to the qualifications of  Mr. Srinivasan and there is no evidence before the Court which permits comparison of the qualifications of the plaintiff and Mr. Srinivasan as is required by White.

The defendant argues that, even if the plaintiff has established a prima facie case, he cannot satisfy the requirement of showing that the defendant's articulated reason for the employment decision is pretext for racial discrimination.  However,  the defendant has not actually set forth its legitimate nondiscriminatory reason for the challenged employment action.  The defendant has not provided an affidavit or other evidence setting out its reason for the employment decision at issue and satisfying its burden of production on this issue.  Instead, the defendant relies on the plaintiff's deposition testimony that he believed Mr. Srinivasan "would be strong competition" for the position as proof of its legitimate, non-discriminatory reason for the employment decision.  See Defendant's Memorandum of Law (Docket Entry No. 103), at 18-19; Docket Entry No. 101-1, at 191.[12]  While the plaintiff's testimony may shed light on his opinion of Mr. Srinivasan or his view of the selection process, the plaintiff certainly cannot speak on behalf of the defendant or satisfy a burden that is the defendant's burden.[13]

_____

[12] The closest the defendant gets to proffering a legitimate, non-discriminatory reason for not selecting the plaintiff is the following statement in its brief: "Dell articulated 'a valid rationale' for not promoting him [the plaintiff]: by Mr. McGowan's admission it did not believe that he was not the most qualified candidate for the position."  See Docket Entry No. 103, at 18.

[13] Further, the plaintiff explains that his acknowledgment that Mr. Srinivasan was "strong competition" did not reflect his opinion of Mr. Srinivasan's qualifications but rather his relationship with management employees.  See Docket Entry No. 115, at 4, ¶ 10, and at 17.

27

Although the defendant's burden of offering a legitimate, non-discriminatory reason is not substantial, the defendant simply has not satisfied its burden of production on this issue. Accordingly, the plaintiff need not set forth proof on the issue of pretext.

### 2. April 2003, Operations Manager Position and September 2002, Quality Assurance Manager Position

The defendant does not address these two claims in its motion for summary judgment. Although the defendant does address an Operations Manager position, see Docket Entry No. 103, at 4-5, that position was filled by Bryan Jacobi in July 2001, see supra, at 32, and is not the same Operations Manager position for which the plaintiff alleges Frank Hitzler was selected in April of 2003. See Complaint, at ¶ 32.

### F. Section 1981

The defendant does not address the plaintiff's Section 1981 claim in its motion for summary judgment. However, the analysis applicable to Section 1981 claims of racial discrimination and Title VII claims of racial discrimination are substantively the same. See Michael v. Caterpillar Financial Services Corp., 496 F.3d 584, 593 (6th Cir. 2007); Newman v. Fed. Express Corp., 266 F.3d 401, 406 (6th Cir. 2001) (applying the McDonnell Douglas framework to claims under Section 1981); Dews, 231 F.3d at 1022, n. 2. Similarly, the United States Supreme Court has found that Section 1981 encompasses claims of retaliation. CBOCS West, Inc. v. Humphries, __ U.S. __, 128 S.Ct. 1951 (2008). There is no reason not to apply the analysis used for Title VII retaliation cases to cases of retaliation brought under Section 1981.

Accordingly, for the same reasons as set out herein with respect to Title VII, summary judgment is warranted in favor of the defendant on the plaintiff's Section 1981 retaliation claim based on the June 13, 2003, incident and on the plaintiff's failure to promote claim based on the January 2003, Quality Assurance Manager position.

G.  State Law Claims

Summary judgment should be granted to the defendant on the plaintiff's state law claims for defamation, whether asserted as a claim of slander or a claim of libel, because such claims have not been timely filed.  The statute of limitations for slander actions is six-months.  <u>See</u> Tenn. Code. Ann. § 28-3-103.  The statute of limitations for libel is one year.  <u>See</u> Tenn. Code. Ann. § 28-3-104(a). The instant action was filed on November 8, 2004.  The plaintiff, whose employment with Dell ended no later than July 11, 2003, has not identified any statements supporting a timely claim for defamation under the applicable statutes of limitations.


**R E C O M M E N D A T I O N**

For the foregoing reasons, the Court respectfully RECOMMENDS:

1)  the defendant's Motion for Summary Judgment (Docket Entry No. 101) be GRANTED to the defendant as to:

    a)        any age discrimination claims;

    b)        the claims under the Tennessee Human Rights Act;

    c)        the state law claims for defamation;

    d)        the Title VII and Section 1981 claims for a hostile workplace;

e)      the Title VII claims for failure to promote based on any events occurring prior to August 15, 2002;

f)      the Title VII and Section 1981 claim for failure to promote based on the January 2003, Quality Assurance Manager position; and

g)      the Title VII and Section 1981 claims for retaliation based on the events of June 13, 2003; and

2) the defendant's motion for summary judgment be DENIED as to:

a)      the Title VII claims for failure to promote based on the April 2003, Operations Manager Position, and the September 2002, Quality Assurance Manager Position;

b)      the Title VII and Section 1981 claims for retaliation based on the plaintiff's separation from employment in July 2003; and

c)      any Section 1981 failure to promote claims for which summary judgment is not specifically granted herein.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made.  Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET  GRIFFIN
United States Magistrate Judge

30